FILED

November 5, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:09 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| JOHN TIDMORE<br>　　　　Employee, | ) Docket No.: 2015-03-0265 |
| | ) |
| v. | ) State File Number: 24517-2015 |
| | ) |
| TENNESSEE STEEL CENTER<br>　　　　Employer,<br>And | ) Judge Lisa A. Knott |
| | ) |
| MITSUI SUMITOMO INSURANCE<br>COMPANY<br>　　　　Insurance Carrier. | ) |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the Employee, John Tidmore, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The present focus of this case is Mr. Tidmore's right shoulder condition. The central legal issues are whether Mr. Tidmore gave proper notice of his claim and whether his injury arose primarily in the course and scope of his employment. For the reasons set forth below, the Court finds that Mr. Tidmore provided proper notice of his gradually occurring injury to his Employer, Tennessee Steel (TN Steel). The Court further finds that based on the evidence presented at this time, Mr. Tidmore is likely to succeed at a hearing on the merits of establishing that his right shoulder condition arose primarily in the course and scope of his employment.[1]

### History of Claim

Mr. Tidmore is a 60-year-old resident of Knox County, Tennessee.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

TN Steel employed Mr. Tidmore to operate a six-hundred-ton press. Mr. Tidmore alleged he received a right shoulder rotator cuff tear from repetitive movements of pulling or pushing a two-foot wrench to loosen and tighten large bolts.

Mr. Tidmore underwent his yearly physical with Dr. Christopher Cox on June 17, 2014. He complained about pain, for about a year, in both shoulders, right greater than left. At his September 17, 2014 visit, Mr. Tidmore informed Dr. Cox he was still experiencing shoulder pain and referenced that he is physically active at work. On March 17, 2015, an MRI of Mr. Tidmore's right shoulder demonstrated a partial thickness tear of two tendons in the shoulder and a labral tear. Dr. Cox referred Mr. Tidmore for an orthopedic evaluation. (Ex. 3.)

The First Report of Injury reflects that Mr. Tidmore provided notice of his injury to TN Steel on March 17, 2015. (Ex. 15.) TN Steel provided Mr. Tidmore a panel of physicians, from which he selected Dr. Paul Brady. (Ex. 5.) Dr. Brady's May 18, 2015 note contains the following:

> He reports the [right] shoulder has been giving him problems for years. It hurts on and off. He denies any specific incident or event on his shoulder. He has seen another physician who ordered an MRI. That MRI demonstrated a high-grade partial to small full-thickness rotator cuff tear. The patient then felt like this was likely attributable to some of his work activities, which require significant force to push and pull hard bolts when tightening and loosening those bolts.

> I told him that without an event or an accident, I cannot within a reasonable degree of medical certainty attribute his rotator cuff tear back to a work-related event and therefore I did not think this is something, which qualifies under current Workmen's Compensation laws as being a work comp injury. I told him I am happy to take care of his shoulder outside of the work comp system if he so desires. Follow up with me as needed. No restrictions from my standpoint.

In addition, Dr. Brady handwrote on the May 18, 2015 WORKlink sheet, "Can not [sic] attribute problem to a work injury."

Mr. Tidmore returned to Dr. Brady on July 27, 2015, and brought a video of a co-worker changing bolts for him to watch. Dr. Brady noted:

> I told him that after reviewing this video I do believe doing this *repetitively* over a long period of time is likely to have contributed/Colles[sic] his rotator cuff tearing. I believe this within a reasonable degree of medical certainty [to be] the case. I told him to work with his mediator in regards to

this causation and whether this should be filed as a Workmen's Compensation injury or under private insurance. (Emphasis added.)

Dr. Brady also made the following addendum to his note: "I believe that Mr. Tidmore's right shoulder rotator cuff tear shows a preponderance of the evidence that his employment contributed more than 50% in causing the injury *considering all causes*." (Emphasis added). (Ex. 2.)

Mr. Tidmore filed a Petition for Benefit Determination seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Tidmore filed a Request for Expedited Hearing, and this Court heard the matter on October 6, 2015.

At the Expedited Hearing, Mr. Tidmore asserted he provided proper notice of his injury because he reported it after realizing his shoulder pain was due to a tear rather than general work aches and pains. He further asserted that Dr. Brady's July 27, 2015 opinion established his injury arose primarily out of and in the course and scope of his employment. TN Steel countered that Mr. Tidmore did not give proper notice of his injury because he knew when he saw Dr. Cox in June 2014, that he thought his shoulder pain was work-related, yet he did not provide notice of his injury to TN Steel until March 17, 2015. TN Steel further countered that Dr. Brady's conflicting causation opinions cancel each other out and should not be given weight because Mr. Tidmore did not provide an accurate history of the time he spent removing the bolts and did not tell Dr. Brady about his gardening activities.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[2] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015

---

[2] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Notice*

Tennessee Code Annotated section 56-6-201(b) (2014) provides the following:

In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee . . . shall provide notice of the injury to the employer within thirty days after the employee:
(1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or
(2) Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Mr. Tidmore testified he always had general aches and pains from performing his physically demanding job. He initially had pain in both shoulders, but ultimately the left shoulder pain resolved. He stated he thought that the right shoulder pain would resolve as well. The Court finds that Mr. Tidmore did not know his work activities resulted in permanent physical impairment until the MRI revealed a tear, and he was referred to an orthopedic physician. Human Resources Manager Vickie Mooney testified that Mr. Tidmore contacted her around March 17th or 18th to advise he was having problems with his right shoulder that he related to a prior 2013 work-related elbow injury. She further noted Mr. Tidmore sent her a text message on March 28, 2015, stating that the date of injury should be the MRI date. (Ex. 13.) Ms. Mooney also testified that Dr. Cox assigned Mr. Tidmore restrictions on March 31, 2015. The Court finds Mr. Tidmore underwent the MRI on March 17, 2015, and provided notice of a work-related injury to TN Steel on either March 17, 2015, or, at the latest, March 28, 2015. (Exs. 13, 15.) Therefore, Mr. Tidmore provided notice within thirty days of knowing his work-related injury resulted in permanent impairment and of being assigned restrictions that prevented him from performing his normal work activities.

*Causation*

An injury causes death, disablement or the need for medical treatment only if it has been shown by a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or the need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2014). Tennessee Code

Annotated section 50-6-102(13)(D) (2014) provides, "'shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." "The opinion of the treating physician, selected by the employee from the employer's designated panel . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(13)(E) (2014).

During the Expedited Hearing, Mr. Tidmore stated any time he had to remove the bolts, it took about one to two minutes to remove all ten of them. He also testified he did not change the bolts all day long. He said some days he does not change the bolts at all, and he may go two to three days without changing the bolts. Plant Manager Ronnie King provided monthly reports that reflect the frequency the bolts were changed. The Court admitted those reports into evidence as Collective Exhibit 9, and they reflect the following:

> In September 2014, the bolts were changed 11 up to 16 times.[3]
> In October 2014, the bolts were changed 13 up to 21 times.
> In November 2014, the bolts were changed 9 up to 11 times.
> In December 2014, the bolts were changed 7 up to 10 times.
> In January 2015, the bolts were changed 9 up to 13 times.
> In February 2015, the bolts were changed 7 up to 9 times.

The nurse case manager, Sue Millhouse, testified that, on one occasion, Mr. Tidmore related to her that he associated his shoulder problems being related to his gardening and life activities. Mr. Tidmore admitted during cross-examination that he has two gardens at home, one four feet by ten feet, and the other twelve feet by twelve feet. He stated he tilled the gardens with a shovel and acknowledged he did not tell Dr. Brady about his gardening activities.

The Court finds Dr. Brady initially opined, in his May 18, 2015 office note and WORKlink sheet, that Mr. Tidmore's shoulder injury was not work-related. Then after watching the video of changing bolts, he said, "doing this repetitively over a long period of time is likely to have contributed/Colles[sic] his rotator cuff tearing." Dr. Brady's second opinion does not meet Mr. Tidmore's burden of establishing that his shoulder injury arose primarily out of and in the course and scope of his employment. Finally, Dr. Brady's third opinion, provided in the addendum, was "I believe that Mr. Tidmore's right shoulder rotator cuff tear shows a preponderance of the evidence that his employment contributed more than 50% in causing the injury considering all causes." Dr. Brady's third causation opinion meets Mr. Tidmore's burden, and is presumed correct since he is the authorized treating physician selected from a panel.

---

[3] The potential additional number is due to a shift change. In this example, the bolts were changed at least eleven times and could have been changed an additional five times due to the shift change.

The premises for Dr. Brady's opinion are that Mr. Tidmore performed the activity depicted on the video "repetitively" and he considered all potential causes of Mr. Tidmore's right shoulder injury. As TN Steel argued, Dr. Brady's notes do not provide his definition of "repetitive" and do not indicate he ever discussed or questioned Mr. Tidmore about any other potential causes for his shoulder injury. It does not appear that Mr. Tidmore provided Dr. Brady with specific information about how many times per month he changed the bolts. Furthermore, the evidence provided at the Expedited Hearing and contained in Exhibit 9 could potentially affect Dr. Brady's opinion about whether Mr. Tidmore performed the bolt-removing activity on a repetitive basis. In addition, Dr. Brady was not provided information about Mr. Tidmore's gardening activities. However, TN Steel did not provide any of this information to Dr. Brady. Therefore, this Court would be engaging in speculation if it were to presume Dr. Brady's opinion would change upon being presented with said information.

Therefore, as a matter of law, Mr. Tidmore has come forward with sufficient evidence from which this Court concludes that he is likely to prevail at a hearing on the merits. His request for medical benefits is granted at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Tidmore's injuries shall be paid and Tennessee Steel Center or its workers' compensation carrier shall provide Mr. Tidmore with medical treatment from Dr. Brady for his right shoulder injury as required by Tennessee Code Annotated section 50-6-204 (2014).

2. This matter is set for an Initial (Scheduling) Hearing on January 5, 2016, at 9a.m. Eastern.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED** this the 5th day of November, 2015.

_____
Judge Lisa A. Knott
Court of Workers' Compensation Claims

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Lisa A. Knott, Court of Workers' Compensation Claims. You must call 865-594-0109 or toll-free at 855-383-0003 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the**

**appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

- EXHIBIT 1: Affidavit of John Tidmore;
- EXHIBIT 2: Medical Records of Dr. Paul C. Brady, Tennessee Orthopedic Clinic;
- EXHIBIT 3: Medical Records of Fountain City Family Practice;
- EXHIBIT 4: Notice of Denial of Claim for Compensation, Form C-23;
- EXHIBIT 5: Agreement Between Employer/Employee Choice of Physicians, form C-42;
- EXHIBIT 6: MSIG Acknowledgement and Assignment;
- EXHIBIT 7: Photographs and Drawings of tools and workstation;
- EXHIBIT 8: Claimant's handwritten Timeline of Events

Technical record:[4]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Appearance of Attorney McLaughlin
5. Notice of Filing of Wage Statement
6. Amended Request for Expedited Hearing
7. Notice of Discovery Filing

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 4th day of November, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|------------------|
| Timothy M. McLaughlin, Employee's Counsel | | | X | tmclaughlin@nmknoxlaw.com |
| Jeffrey C. Taylor, Employer's Counsel | | | X | jeff@taylorlawfirmtn.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov